MYERS, ET AL. *v.* HART, ET AL.

[No. 33, September Term, 1967.]

444

*Decided January 9, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, BARNES, MCWILLIAMS and SINGLEY, JJ.

*F. Murray Callahan* and *R. Edwin Brown* for appellants.

*E. Tillman Stirling,* with whom were *Reasoner & Davis* on
the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

Dorothy Hart Foster died domiciled in Montgomery County,
Maryland, on 4 February 1965, survived by four children who
were her only next of kin and heirs at law: a daughter, Sally
Foster Myers, and a son, John Arthur Hart Foster, the ap-
pellants here and caveators below, and two daughters, Dorothy
Hart Foster and Marcia Hart Foster, two of the appellees here
and caveatees below.

Mrs. Foster had apparently drawn her own will, dated 16
August 1963. The will, which was admitted to probate on 12

March 1965 by the Orphans' Court for Montgomery County, is set out in full:

> "I, Mrs. Dorothy Hart Foster of the city of Chevy Chase 15, State of Maryland do hereby make, publish and declare this to be my last will and testament.
>
> "First: I desire that my just debts, including the expenses of my last illness and funeral, be paid as soon as may be practicable after my death.
>
> "Second: All of the residue of my estate, whether real, personal or mixed, wheresoever situate, and whether now owned or hereafter acquired (unless otherwise specified on a list attached hereto) I give, devise and bequeath with equal distribution unto my two daughters Dorothy Hart Foster, Jr. and Marcia Hart Foster with the request that as practicable the principle [sic] be held intact and only interest be spent.
>
> "Third: I appoint as executor of my will, my brother, Edmond Jerome Hart of Madison, Wisconsin; I request that he be permitted to serve without sureties on his bond and that, without application to or order of courts, he have full power and authority to sell, transfer, grant, convey, exchange, lease, mortgage, pledge, or otherwise encumber or dispose of, any or all of the real and personal property of my estate." (Testimonium and attestation clauses omitted).

The record discloses that Mrs. Foster's gross real and personal estate approximated $94,000 and that the daughters named in the will were the only unmarried children of the testatrix.

Notice of caveat was filed on 10 September 1965 by Mrs. Myers and Mr. Foster, the daughter and son of the testatrix who were not named in the will. On 7 October 1965, a petition and caveat was filed; on 14 October 1965, the executor and the named beneficiaries answered; and thereafter, issues were framed by counsel for the parties and transmitted to the Circuit Court for Montgomery County for submission to a jury.

From a ruling of the circuit court that the issues presented

no questions of fact for submission to a jury, this appeal was taken.

The issues framed by the Orphans' Court were:

> "1. Does the Decedent's failure to expressly exclude her unnamed children indicate that decedent intended such unnamed children to share in the estate?

> "2. Does the language in decedent's will 'unless otherwise specified on a list attached hereto', together with a lack of express words excluding her unnamed children, indicate that decedent intended such unnamed children to share in the estate?

> "3. Does the failure of decedent to expressly exclude her unnamed children and the language in the will 'unless otherwise specified on a list attached hereto' render it incomplete, ambiguous and therefore void?

> "4. Was the paper writing dated August 16, 1963, intended by decedent to dispose of her entire estate?"

Statutory authority for the conduct of plenary proceedings in the Orphans' Court and the transmission of issues to a court of law for trial is found in Maryland Code (1957) Art. 93 §§ 278 and 280.

> "The practice of framing and directing issues to be tried by a jury was borrowed from Chancery and the ecclesiastical courts of England. It was in vogue in this state prior to the passage of the act of 1798, which codified the testamentary system. Issues are not proper in any case before the orphans' court except as ancillary to some relief in a matter over which it has jurisdiction to decide. They are sent to a court of law for trial in order that the questions of fact in dispute may be determined by a jury." Sykes, *Contest of Wills in Maryland* (1941) § 21 at 29.

The procedure was summarized by Judge Delaplaine in the opinion which he filed for the Court in *Fidelity Trust Company v. Barrett,* 186 Md. 483, 487, 47 A. 2d 72 (1946):

> "The statute now provides that the Orphans' Court, upon application of either party in any case of contro-

versy therein, may direct a plenary proceeding by bill or petition, to which there shall be an answer under oath; and in such a proceeding the court, upon request of either party, shall direct an issue or issues to be made up and shall send the same to any court of law convenient for trial; and upon the bill and answer and the finding of the jury the orphans' court shall enter its judgment or decree. Code, 1939, Art. 93, Secs. 264, 265; *Sumwalt v. Sumwalt,* 52 Md. 338, 346; *Schmidt v. Johnston,* 154 Md. 125, 133, 140 A. 87. An issue is a single, definite, and material question framed from the allegations of a petition and the answers thereto. *Ward v. Poor,* 94 Md. 133, 50 A. 572. Before a proposed issue is acted upon, the orphans' court must determine (1) whether it has jurisdiction of the subject, (2) whether the question raised by the issue is properly before the court, and (3) whether the issue is irrelevant and material to the question before the court. If the court has no jurisdiction of the subject, or the question is not properly before the court, or the issue is relevant or immaterial, then it is the duty of the court to refuse to send it to a court of law for trial."

Although the transmission of issues to a law court for trial is most frequently used in caveat cases, it is a procedure available in all cases in controversy within the jurisdiction of the orphans' court for which no special provision has been made. *Flaks v. Flaks,* 173 Md. 358, 196 A. 116 (1938). It is essential, however, that each issue meet the *Barrett* tests: (1) Does the orphans' court have jurisdiction of the subject? (2) Is the question properly before the orphans' court? (3) Is the issue relevant and material to the question before the orphans' court?

Under these tests, the issues before us are fatally defective. Although cast in language raising questions of intent, the issues actually are directed to the intention of the testatrix as expressed in the will and not to the intention of the testatrix as to the factum of the will.

The intention of the testatrix as expressed in the will is a

problem of construction, over which the orphans' court has no jurisdiction. It is a matter of interpretation, a question of law which can only be determined by a court of equity. *McLaughlin v. McLaughlin,* 186 Md. 165, 173, 46 A. 2d 307 (1946) ; *Home for the Aged v. Bantz,* 106 Md. 147, 153, 66 A. 701 (1907) ; *Ramsey v. Welby,* 63 Md. 584, 587 (1885).

The issues raised questions over which the orphans' court had no jurisdiction, and the powers of the court could not be extended as the appellants contend, by the approval apparently given the form of the issues by counsel in the case before us. *Little Sisters of the Poor v. Cushing,* 62 Md. 416, 419 (1884). The orphans' court should have refused to send the issues to a court of law for trial. *Fidelity Trust Co. v. Barrett,* 186 Md. 483, 47 A. 2d 72 (1946) ; *Bruton v. Smith,* 174 Md. 516, 199 A. 517 (1938) ; *Bridge v. Dillard,* 104 Md. 411, 65 A. 10 (1906). Once the issues had been transmitted, however, the circuit court could not review the proceedings of the orphans' court and reform the issues. *Forsythe v. Baker,* 180 Md. 144, 23 A. 2d 36 (1942) ; *Holland v. Enright,* 169 Md. 390, 181 A. 836 (1935) ; *Holland v. Enright,* 167 Md. 604, 175 A. 466 (1934).

The appellants rely heavily on the parenthetical proviso in item second of the will which made a devise and bequest of the residue to the two daughters "(unless otherwise specified on a list attached hereto)." No such list was offered for probate.

> "A caveat may be filed to establish the true text of a will. Thus, whether certain erasures or alterations appearing on the face of a will were made by the testator, and if so, whether he possessed at the time of making them testamentary capacity, are questions relating to the factum of the will, i.e., the making of it, as distinguished from the construction thereof, and may be reached by caveat." Sykes, *op. cit.,* § 171, at 209.

The validity of such a paper, if produced, could have been tested by caveat, as can be the validity of interlineations and erasures, but the effect of the parenthetical language, like the

effect of an interlineation or erasure, is a question of construction to be determined in equity. *See, Fidelity Trust Co. v. Barrett, supra; Home for the Aged v. Bantz, supra.*

It follows that the circuit court correctly ruled that the issues presented no questions of fact which could be submitted to a jury. *McSherry v. Wimsatt,* 116 Md. 652, 82 A. 451 (1911) ; *Dronenburg v. Harris,* 108 Md. 597, 71 A. 81 (1908).

*Affirmed, costs to be paid by appellants.*